IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

HARRY S. HOUGH,                              )    CIVIL ACTION NO. 9:15-0190-DCN-BM
                                             )
                    Plaintiff,               )
                                             )
v.                                           )    **REPORT AND RECOMMENDATION**
                                             )
CAROLYN W. COLVIN,                           )
COMMISSIONER OF SOCIAL                       )
SECURITY ADMINISTRATION,                     )
                                             )
                    Defendant.               )
_____      )

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of the final decision of the Commissioner wherein he was denied disability benefits.

This case was referred to the undersigned for a report and recommendation pursuant to Local Rule

73.02(B)(2)(a), (D.S.C.).

Plaintiff applied for Disability Insurance Benefits (DIB) and Supplemental Security

Income (SSI)[1] on April 2, 2012, alleging disability as of April 30, 2010 due to problems with the left

side of his face and neck due to cancer surgery in that area, as well as from prostate cancer.  (R.pp.

183-194, 207).[2]  Plaintiff's claims were denied both initially and upon reconsideration.  Plaintiff then

---

[1]Although the definition of disability is the same under both DIB and SSI; Emberlin v. Astrue, No.
06-4136, 2008 WL 565185, at * 1 n. 3 (D.S.D. Feb. 29, 2008); "[a]n applicant who cannot establish
that [he] was disabled during the insured period for DIB may still receive SSI benefits if [he] can
establish that [he] is disabled and has limited means." Sienkiewicz v. Barnhart, No. 04-1542, 2005
WL 83841, at ** 3 (7th Cir. Jan. 6, 2005).  See also Splude v. Apfel, 165 F.3d 85, 87 (1st Cir.
1999)[Discussing the difference between DIB and SSI benefits].

[2]While Plaintiff stated in his disability application that he has had prostate cancer for which he
takes medication; see (R.pp. 207, 209); his testimony at the hearing was that the pain and spasms he
suffers from , and which he believes entitle him to disability payments, relate to residuals from the
(continued...)



requested a hearing before an Administrative Law Judge (ALJ), which was held on August 23, 2013. (R.pp. 28-78). The ALJ thereafter denied Plaintiff's claims in a decision issued December 6, 2013. (R.pp. 12-21). The Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 1-5).

Plaintiff then filed this action in United States District Court. Plaintiff asserts that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for further consideration, or for an outright award of benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that Plaintiff was properly found not to be disabled.

## Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

---

[2](...continued)
surgery for his tonsil and neck cancer. See (R.pp. 45-51, 57-60).



Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)).

The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by substantial evidence." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

### Discussion

A review of the record shows that Plaintiff, who was forty-nine (49) years old on the date he alleges he became disabled, has a high school education as well as three years of college, and past relevant work experience as an assembly line supervisor, machine operator, fork lift operator, and assembler. (R.pp. 19, 31, 41-45). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that he has an impairment or combination of impairments which prevent him from engaging in all substantial gainful activity for which he is qualified by his age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months. After a review of the evidence and testimony in this case, the ALJ determined that, although Plaintiff does suffer from the "severe" impairment[3] of residual symptoms of cancer with pain from the left ear to the Adam's apple, thereby rendering him unable to perform any of his past relevant work, he nevertheless retained the residual functional capacity (RFC) to perform a restricted range of light work,[4] and was

---

[3]An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1521(a); Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987).

[4]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying (continued...)



therefore not entitled to disability benefits. (R.pp. 14, 16, 19-21).

Plaintiff asserts that in reaching his decision, the ALJ erred by finding that Plaintiff could perform light work when the ALJ's own findings supported an RFC of no more than sedentary work,[5] by failing to properly develop the record, by failing to adequately evaluate and consider Plaintiff's subjective testimony as to the extent of his pain and limitations, and by failing to follow the "treating physician's rule". However, after a careful review and consideration of the evidence and arguments presented, the undersigned finds and concludes for the reasons set forth hereinbelow that there is substantial evidence to support the decision of the Commissioner, and that the decision should therefore be affirmed. <u>Laws</u>, 368 F.2d 640 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"].

## I.

### (Medical Evidence)

A review of Plaintiff's medical records show that he had an MRI on April 1, 2010, which revealed a mass in Plaintiff's left neck. (R.p. 274). A fine needle aspiration revealed a squamous cell carcinoma, and on May 26, 2010 Plaintiff underwent a panendoscopy, followed by

---

[4](...continued)
of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b) (2005).

[5]Sedentary work is defined as lifting no more than 10 pounds at a time and occasionally lifting and carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a) (2005).



a left modified radical neck dissection.[6]  Plaintiff's attending physician, Dr. Edward Woody, noted that Plaintiff's post-operative course was uneventful, and Plaintiff was discharged from the hospital on May 29, 2010 with a diagnosis of squamous cell carcinoma of the left tonsil metastatic to left neck.  (R.pp. 280-281).  See also (R.pp. 287-289).

Following surgery, Plaintiff was referred to Dr. Raleigh Boulware for radiation therapy to prevent local recurrence.  Plaintiff went to see Dr. Boulware on June 10, 2010, at which time Dr. Boulware noted that Plaintiff's surgery had revealed a poorly differentiated carcinoma squamous carcinoma, and that post-operatively Plaintiff had "done well".[7]  On examination Dr. Boulware noted that "[Plaintiff] is a very healthy gentleman [with] [t]he most remarkable finding in the head and neck area [being] a well-healed scar with minimal post surgical induration on the left side of the neck".  (R.pp. 321-322).

During the course of Plaintiff's radiation treatment, he experienced mucositis in his oral cavity, for which he received some medications, with his main complaint being nausea.  Plaintiff also suffered from some analgesia, but otherwise his physical examinations were generally unremarkable.  By the time Plaintiff was nearing the end of his treatment he was complaining about pain and numbness, which the attending physician (Dr. Diane Truesdale) believed would hopefully decrease within three weeks of the ending of the treatment.  Plaintiff wrapped up his radiology

---

[6]The notes from Plaintiff's May 2010 medical procedure also reflect, under "Past Medical History", the following: "No other ongoing medical problems or conditions.  Survival of prostate carcinoma".  (R.p. 280).  As previously noted; see n. 2, supra; there is no other indication in the record or in Plaintiff's testimony that his history of prostrate cancer has any bearing on his purported disability.

[7]Dr. Boulware further noted that Plaintiff's past medical history included prostrate surgery in 2008, from which Plaintiff appeared to "be doing well" and that his "PSAs have been undetectable".  (R.p. 321); see also, n. 2 and 6, supra.



treatment on September 17, 2010, and was then referred back to Dr. Woody.  See generally, (R.pp. 323-337).

Plaintiff saw Dr. Woody following the end of his radiation treatments, where he complained of left neck pain and an increasingly sore oral cavity.  Dr. Woody advised Plaintiff that he could expect this condition to continue to worsen for two to four weeks (similar to the advice Plaintiff had received from Dr. Truesdale).  (R.pp. 304-306).  See also (R.p. 335).  On November 16, 2010, Dr. Woody noted that Plaintiff was "still bothered by pain [in his] left neck".  Plaintiff had a medication refill, and was told to see Dr. Anna Bouknight (who was with the same practice) in six weeks.  (R.p. 301).[8]  Plaintiff then followed up with Dr. Bouknight on January 14, 2011, at which time he continued to complain of "severe" left sided neck/head pain.  On examination there were no masses or mucosal lesions seen, with other findings being noted by Dr. Bouknight as "normal".  Dr. Bouknight ordered a "contrast" be obtained for Plaintiff's continuing complaints of neck and head pain.  (R.p. 300).

Plaintiff thereafter underwent a "CT soft tissue neck without contrast" on April 27, 2011.  There was no mastoid or middle ear effusion seen, the visualized intracranial contents were within normal limits, and Plaintiff's orbits and paranasal sinuses were also normal, as were his thyroid gland and hyoid neck.  Plaintiff's parapharyngeal spaces were symmetric, the tongue base and floor of the mouth were within normal limits, and his epiglottis and glottis were also both normal.  There was a slight asymmetry of the palitinc tonsils, left larger than right, with no apparent parapharyngeal space invasion. It was also noted on the treatment sheet that Plaintiff had "refused

---

[8]Subsequent to this visit, Dr. Woody left his practice to go on a sabbatical, so Plaintiff's care was transferred to Dr. Bouknight.  (R.p. 338).



[an] intravenous contrast". (R.p. 310).

Three months later, Plaintiff presented to Radiation Oncology (Dr. Boulware's practice) on July 8, 2011 for complaints of ongoing neck pain, where he was seen by Physician's Assistant Karen Ferguson. Ferguson recorded in her treatment notes that in 2010 Plaintiff had been followed by Dr. Woody, but that Dr. Woody had left his practice and turned Plaintiff's care over to Dr. Bouknight. PA Ferguson further noted that Plaintiff had seen Dr. Bouknight in January 2011, but had thereafter failed to keep any subsequent followups until March 2011. At that time Dr. Bouknight had ordered an MRI study, following which Plaintiff had failed to show up for an appointment to discuss the results of the MRI study. Dr. Bouknight had therefore had her office contact the Plaintiff at home to tell him that the MRI study was negative. Plaintiff was thereafter scheduled to see Dr. Bouknight in June for a followup visit, but he again failed to show. Plaintiff told PA Ferguson that he did not like Dr. Bouknight and asked to see Dr. Boulware for an evaluation of his condition. Plaintiff also told PA Ferguson that he had been experiencing pain since undergoing radiation therapy, which had never truly dissipated. PA Ferguson recommended to Plaintiff that he return to see Dr. Bouknight for an evaluation, but Plaintiff appeared resistant to do so. Plaintiff was also apparently seeking pain prescriptions, but PA Ferguson noted that Dr. Woody had stopped "scripting any future medication and [had] recommended [Plaintiff] try over-the-counter Ibuprofen", and that she (PA Ferguson) was not willing "to script for any pain medications today". (R.pp. 338-339).

Plaintiff did not return to see Dr. Bouknight, as recommended by PA Ferguson, but instead went to the VA to establish care on July 15, 2011. Plaintiff was seen at the VA by Dr. Michael Faircloth, who noted that other than a complaint of chronic neck pain, Plaintiff had a normal



review of systems.  On examination Plaintiff was found to be alert and in no acute distress, his neck was supple with no JVD or bruits, neurologically his cranial nerves were intact and he had normal sensation and strength throughout, his musculoskeletal system had no synovitis or joint swelling or tenderness, and he had a normal range of motion.  Plaintiff was to receive an analgesic for his residual pain complaint, and was told to report any changes in his pain level.[9]  (R.pp. 406-409). Plaintiff also had a PET scan, which "looked good" and showed that "the nodules that were there before are not there anymore".  (R.p. 401).

Plaintiff saw Dr. Faircloth again on October 4, 2011.  Although Plaintiff advised that the analgesic he had been prescribed provided temporary relief, he continued to complain of persistent neck pain and muscle spasms.  Review of Plaintiff's systems on this visit was negative, including for headache, dizziness, paresthesias or muscle weakness, and on examination Dr. Faircloth found Plaintiff to be well developed, well nourished, and in no distress, with a well healed surgical scar at the base of his left neck.  Plaintiff exhibited spasm with active range of motion of the neck, and he was continued on his medications and told to followup as scheduled, or sooner if he had any concerns.  Plaintiff was also referred to physical therapy.  (R.pp. 399-400).

When Plaintiff reported for physical therapy, it was noted that he was independent in all activities of daily living and had "no medical conditions limiting participation in therapy". Although Plaintiff complained of pain on the left and spasming, which he stated was at a level of six on a ten point scale, he was noted to be ambulatory without the need of an assistive device and to be in no acute distress.  (R.pp. 360-361).  By November 22, 2011 Plaintiff's muscle spasms were

---

[9]Dr. Faircloth also noted, when recording Plaintiff's medical history, that he had a history of prostate cancer for which he had had surgery, and for which Plaintiff had "no residual [symptoms]". (R.p. 408)



noted to have "decreased". Plaintiff was using "heat and noted relief as well", although he still had decreased function with impaired cervical mobility and pain. (R.pp. 386-387). By December 8, 2011 Plaintiff was still complaining of pain and sensitivity, but had obtained a fifty percent improvement in his neck rotation. Plaintiff thereafter was a no show for his next scheduled physical therapy session on December 19, 2011. (R.pp. 382-384).

On January 18, 2012, Plaintiff presented to the emergency room complaining of atypical chest pain and allergic rhinitis. Plaintiff listed his level of pain on a ten point pain scale as being a five, although on examination was found to have no decreased range of motion in any extremities and no joint pain. Further, although he was not at the emergency room for any complaints regarding his neck, his neck was examined as part of an overall physical examination and was found to be supple with no thyroidmegaly. (R.pp. 372-373). Plaintiff thereafter presented to the emergency room again three months later, on April 16, 2012, where he complained of experiencing pain in the left side of his face for "the past 2 weeks". Plaintiff told the nurse that he had run out of his Tylenol with codeine approximately three weeks ago, and he was scheduled for a "medication renewal". (R.pp. 368-369).

On July 19, 2012, Plaintiff's medical records were reviewed by state agency physician Dr. Joyce Broadas-Lewis, who opined that Plaintiff did not have a severe impairment and was not disabled. (R.pp. 79-86).

On July 14, 2012 Plaintiff had an MRI of his "neck spine w/o contrast" which revealed annular bulging which "minimally" encroached on the anterior aspect of the central canal at C3-4 and C4-5 without significant spinal cord compression. No other abnormalities of the cervical spine were noted. Plaintiff also had a "mild" encroachment on the anterior aspect of the



central canal at T2-3 due to annual bulging or a disc protrusion, although the thoracic spinal cord did not appear to be compressed. (R.p. 425). A separate bone density scan performed on July 25, 2012 was normal, with the bone mineral density at the right femoral neck being at the upper border of the normal range. (R.p. 424).

On November 29, 2012, state agency physician Dr. George Keller reviewed Plaintiff's medical records and opined that Plaintiff's head and neck impairment limited him to the performance of medium work[10] with the ability to stand and/or work (with normal breaks) for about six hours in an eight hour workday, and sit (with normal breaks) for about six hours in an eight hour work day. Dr. Keller further opined that Plaintiff had an unlimited ability to push and/or pull within the RFC for medium work, and had few other restrictions. (R.pp. 97-107).[11]

After being seen at pain management on February 22, 2013 for complaints of tenderness in his neck; see (R.pp. 489-491); there is no evidence of any other treatment for Plaintiff's purported neck pain between January 1, 2013 and his August 23, 2013 administrative hearing. Plaintiff did present to the emergency room on January 6, 2013 complaining of cold symptoms and a cough, and when his neck was examined as part of an overall physical examination on that visit, it was found to be mobile and supple with no lymphadenopathy or meningismus. (R.pp. 494-496). Plaintiff thereafter returned again to the emergency room on April 4, 2013, this time complaining of sinus pressure and pain. Again his neck was found on examination to be supple with "full [range of motion]", and with no JVD and no significant lymphadenopathy. (R.pp. 483-484).

---

[10]Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

[11]As part of this evaluation, Dr. Keller also specifically found that Plaintiff's history of prostate cancer was a "not severe" impairment. (R.p. 104).



## II.

### (RFC Finding)

**Walking and Standing Restriction**.  Plaintiff initially complains that the ALJ erred in his vocational evaluation by finding that Plaintiff could perform a reduced range of light work even though he limited Plaintiff to standing or walking for no more than two hours in an eight hour work day.  See (R.p. 16).  Plaintiff argues that a job is in the light work category when it requires a good deal of walking or standing, while a sedentary job is generally one where periods of standing or walking should total no more than two hours in an eight hour work day, citing to SSR 83-10. Plaintiff argues that it was therefore reversible error for the ALJ to find that Plaintiff could do light work with the standing and walking restriction included by the ALJ in Plaintiff's RFC.

However, a job is classified as being in the light work category "when it requires a good deal of walking or standing, *or* when it involves sitting most of the time with some pushing and pulling of arm and leg controls".  20 C.F.R. § 404.1567(b)(2005)(emphasis added).  Plaintiff's RFC does not restrict him from performing the sitting criteria for light work.  Further, this is the definition for the *full range* of light work.  The ALJ did not find that Plaintiff could perform the full range of light work - he found that Plaintiff had the exertional capacity for light work with *certain specified restrictions* due to his impairment.  See 20 C.F.R. § 404.1545(a)(1) [defining an RFC as "the most [a claimant] can still do despite [the claimant's] limitations."].  That is the job of the ALJ - to evaluate the evidence and make a fact finding as to what RFC a claimant has taking into consideration the limitations imposed by their impairment(s).  See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) [It is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]; Carlson v. Shalala, 999 F.2d 180, 181 (7th Cir. 1993) ["...What we require is that



the ALJ sufficiently articulate his assessment of the evidence to 'assure us that the ALJ considered the important evidence ... [and to enable] us to trace the path of the ALJ's reasoning.'"]; see also Trenary v. Bowen, 898 F.2d 1361, 1364 (8th Cir. 1990) [Courts should properly focus not on a claimant's diagnosis, but on the claimant's actual functional limitations]. Plaintiff is simply not correct in arguing that his walking and standing limitation as found by the ALJ prohibited the ALJ from assigning him any greater level of work capacity than sedentary. Santiago v. Barnhart, 367 F.Supp.2d 728, 733 (E.D.Pa. 2005) ["There is nothing oxymoronic in finding that a plaintiff can perform a limited range of light work [where] the evidence shows that the Plaintiff can perform some, though not all, of the exertional requirements of [the light work] range"].

Additionally, the ALJ's conclusion that Plaintiff could perform light work with the walking and standing restriction noted in the decision is further supported by the testimony of the Vocational Expert at the hearing. When asked by the ALJ whether an individual of Plaintiff's age, education, and past job experience who was limited to light work with the restrictions noted in the decision could perform work activity, the VE identified several light work jobs as performed in the national economy that Plaintiff could perform with these limitations. See (R.pp. 66-77); see also (R.pp. 20-21). The ALJ could properly rely on the VE testimony in finding that Plaintiff could perform the light work jobs identified by the VE with his limitations. Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980)[ALJ may rely on VE opinion based on training, experience and familiarity with skills necessary to function in various jobs]; Matthias v. Colvin, No. 12-1203, 2015 WL 1191281 at * 12 (D.Del. Mar. 13, 2015) [ALJ had sufficient basis to find that Plaintiff, who had an additional sitting/standing requirement, could perform a limited range of light work, based on the additional accommodations and the VE's testimony].



**General RFC analysis**.  Finally, Plaintiff also generally complains that the ALJ's RFC finding was deficient because it "appeared out of the blue without explanation", and because the ALJ failed to perform a function-by-function comparison of Plaintiff's specific limitations.  See Plaintiff's Brief, p. 18.  However, a careful review of the ALJ's analysis and findings fails to substantiate Plaintiff's claim of an improper RFC analysis.

RFC is defined as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).  In SSR 96-8p, RFC is defined as a function-by-function assessment of an individual's physical and mental capacities to do sustained, work-related physical and mental activities in a work setting on a regular and continuing basis of eight hours per day, five days per week, or the equivalent.  SSR 96-8p, 1996 WL 374184.  An RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations);" Id. at *7; and a remand may be appropriate only "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir.2015), citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013).  Such is not the case here.

A review of the decision shows that the ALJ set forth a narrative discussion of the medical and nonmedical evidence  which led him to conclude that Plaintiff had the RFC to perform the range of light work noted in the decision, specifically noting the medical treatment Plaintiff had received, the findings from his examinations, as well as the results of his physical therapy, Plaintiff's negative MRI study of March 2011, and his VA records showing that Plaintiff was in no acute distress, had a supple neck, was able to move all extremities, had no decreased range of motion, and



no joint pain.  (R.pp. 15, 17).  These records consistently reflect generally normal physical examinations, that Plaintiff's neck was supple with no JVD or bruits, that he had normal sensation and strength, and that Plaintiff was independent in his actions of daily living.  (R.pp. 300, 310, 360-361, 399-401, 483-484, 494-496).  The ALJ also noted the medical records showing that Plaintiff's medicines helped with his complaints of pain, as well as Plaintiff's own testimony that he could drive and even walk up to a mile.  (R.p. 18).

In reaching None of Plaintiff's medical records contain any indication by any medical provider that Plaintiff was permanently disabled from performing all work activity; see Lee v. Sullivan, 945 F.2d 687, 693 (4th Cir. 1991)[finding that no physician opined that claimant was totally and permanently disabled supported a finding of no disability]; nor do they indicate that Plaintiff was more limited in walking or standing or otherwise limited posturally other than as was found by the ALJ.  Indeed, it is readily apparent that the ALJ gave Plaintiff every benefit of the doubt as to the limiting effects of his impairment by assigning Plaintiff an RFC that was even *less* than the RFC opined to by both of the state agency medical consultants.  (R.pp. 18-19).  See Marquez v. Astrue, No. 08-206, 2009 WL 3063106 at * 4 (C.D.Cal. Sept. 21, 2006)[No error where ALJ's RFC finding was even more restrictive than the exertional levels suggested by the State Agency examiner]; see also Siler v. Colvin, No. 11-303, 2014 WL 4160009 at * 5 (M.D.NC. Aug. 19, 2014) [Same]; cf. Muir v. Astrue, No. 07-727, 2009 WL 799459, at * 6 (M.D.Fla. Mar. 24, 2009)[No error where ALJ gave Plaintiff even a more restrictive RFC than the medical records provided].

In reaching this decision, the ALJ also noted Plaintiff's uneven treatment compliance as well as his credibility shortcoming in finding that Plaintiff's limitations were less than he claimed.  Cf. Anderson v. Barnhart, 344 F.3d 809, 815 (8th Cir. 2003) [Evidence that a claimant is exaggerating symptoms can be considered as part of the evaluation of Plaintiff's subjective



complaints]; see 20 C.F.R. §§ 404.1530, 416.930 [Failure to follow prescribed treatment without

good reason is grounds to find a claimant not disabled]; see also Hunter v. Sullivan, 993 F.2d 31,

36 (4th Cir. 1993)[Considering Plaintiff's failure to follow treatment plan as a factor in assessing

Plaintiff's credibility]; SSR 96-8p, 1996 WL 374184, at * 7 [RFC assessment should include

evaluation of medical facts as well as nonmedical evidence such as activities and observations]; see

also credibility discussion, infra.  Even so, while the examination results and the state agency

physician opinions showed that Plaintiff's limitations were not as severe as alleged, the ALJ

nonetheless accommodated Plaintiff's complaints of pain on movement by inserting the restricted

walking and standing requirement into the RFC as well as by limiting his postural activities and

restricting him from working around unprotected heights and moving machinery as a result of

mobility and mild concentration issues.  The ALJ further accommodated Plaintiff's complaint of

pain and spasms in the left neck area by restricting him to only occasional overhead reaching.  (R.pp.

15-17, 19).

        In sum, after a review of the decision and the record in this case, the undersigned does

not find that the ALJ conducted an improper RFC analysis, or that his decision otherwise reflects a

failure to consider the effect Plaintiff's impairment had on his ability to work.  Carlson, 999 F.2d at

181 ("What we require is that the ALJ sufficiently articulate his assessment of the evidence to

'assure us that the ALJ considered the important evidence ... [and to enable] us to trace the path of

the ALJ's reasoning.'"); Bowen, 482 U.S. at 146 [Plaintiff has the burden to show that he has a

disabling impairment]; see also Knox v. Astrue, 327 Fed.App. 652, 657 (7th Cir. 2009) ["[T]he

expression of a claimant's RFC need not be articulated function-by-function; a narrative discussion

of a claimant's symptoms and medical source opinions is sufficient"], citing Bayliss v. Barnhart, 427

F.3d 1211, 1217 (9th Cir. 2005); Osgar v. Barnhart, No. 02–2552, 2004 WL 3751471 at *5 (D.S.C.



Mar. 29, 2004). While Plaintiff obviously believes that he should have been assigned greater limitations based on his history of consistent complaints of pain, it is the job of the ALJ to evaluate the record and make findings after a review of the evidence, which is what the ALJ did in this case. The ALJ made specific findings with respect to Plaintiff's RFC and addressed what evidence those findings were based on and why, and Plaintiff's argument that the ALJ should have gone into even greater detail with respect to his findings is without merit. Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) [ALJ not required to specifically refer to every piece of evidence in the decision]; Rogers v. Barnhart, 204 F.Supp.2d 885, 889 (W.D.N.C.2002).

Even assuming for purposes of further discussion that Plaintiff is correct that a different conclusion *could have* been reached based on the evidence prevented, that is not a basis on which to overturn the decision. Kellough v. Heckler, 785 F.2d 1147, 1149 (4th Cir. 1986) ["If the Secretary's dispositive factual findings are supported by substantial evidence, they must be affirmed, even in cases where contrary findings of an ALJ might also be so supported."] (citation omitted)]; Guthrie v. Astrue, No. 10-858, 2011 WL 7583572, at * 3 (S.D. Ohio Nov. 15, 2011), adopted by, 2012 WL 9991555 (S.D.Ohio Mar. 22, 2012) [Even where substantial evidence may exist to support a contrary conclusion, "[s]o long as substantial evidence exists to support the Commissioner's decision . . . this Court must affirm."]. There is nothing in the record cited and discussed hereinabove which would warrant this Court overturning the ALJ's RFC decision in this case, and this claim of error is therefore without merit. Hays, 907 F.2d at 1456 [It is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]; Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996) ["The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court"]; Poling v. Halter, No. 00-40, 2001 WL 34630642, at * 7 (N.D.W.Va. Mar. 29, 2001) ["It is the duty of the ALJ, rather than the reviewing court, to assess the evidence of record and



draw inferences therefrom"].

### III.

### (Credibility Analysis)

Plaintiff also contends that the ALJ committed reversible error in his evaluation of Plaintiff's testimony and credibility. Plaintiff argues that the ALJ determined his RFC without properly evaluating the credibility of his subjective complaints as to the extent of his pain and limitation, as well as by improperly assessing the effects of his activities of daily living, receipt of unemployment insurance, and work record.

Where a claimant seeks to rely on subjective evidence to prove the severity of his symptoms, the ALJ "must make a finding on the credibility of the individual's statements, based on a consideration of the entire case record." See SSR 96–7p, 1996 WL 374186, at *2 (July 2, 1996); Mickles v. Shalala, 29 F.3d 918, 925-926 (4th Cir.1994)[In assessing the credibility of the severity of reported subjective complaints, consideration must be given to the entire record, including the objective and subjective evidence]. Further, when objective evidence conflicts with a claimant's subjective statements, an ALJ is allowed to give the statements less weight; see SSR 96–7p, 1996 WL 374186, at *1; Craig, 76 F.3d 595 ["Although a claimant's allegations about his pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment."]; and after a review of the record and evidence in this case, the undersigned can find no reversible error in the ALJ's treatment of the subjective testimony given by Plaintiff. Ables v. Astrue, No. 10–3203, 2012 WL 967355, at *11 (D.S.C. Mar. 21, 2012) ["Factors in evaluating the claimant's statements include consistency in the claimant's statements, medical evidence, medical treatment history, and the adjudicator's



observations of the claimant.", citing to SSR 96–7p.]; <u>Bowen</u>, 482 U.S. at 146 [Plaintiff has the burden to show that he has a disabling impairment]; <u>Jolley v. Weinberger</u>, 537 F.2d 1179, 1181 (4th Cir. 1976)[finding that the objective medical evidence, as opposed to the claimant's subjective complaints, supported an inference that he was not disabled].

        The ALJ noted in his decision that Plaintiff testified he has constant, chronic pain and spasms in the left side of his neck, with muscle spasms occurring on average twenty to twenty-five times a day, that he can stand for only ten minutes without moving, and was able to lift only fifteen pounds with his right arm and ten pounds with his left arm. However, while finding that Plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms Plaintiff alleged, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely credible for a variety of reasons. In doing so, the ALJ not only noted Plaintiff's treatment records and history; discussed herein <u>supra</u>; which fail to support the degree of limitation claimed by the Plaintiff, but also the fact that Plaintiff himself testified that he could walk up to a mile, that he was able to drive an automobile for a considerable distance,[12] and was also able to engage in such activities as going to church and to the store, caring for a school-aged child, and raking leaves. (R.pp. 17-18); <u>see</u> <u>also</u> (R.pp. 53-56, 59-60. 244, 387, 502). <u>See</u> <u>Hunter v. Sullivan</u>, 993 F.2d 31, 35 (4th Cir. 1993) [ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints]; <u>see</u> <u>also</u> <u>Craig</u>, 76 F.3d at 595 ["Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they

---

[12]Plaintiff testified that he drove over thirty miles round trip just to come to the hearing on his application. (R.p. 54).



are inconsistent with the available evidence, including objective evidence of the underlying impairment."].

Plaintiff's medical records and testimony provide substantial evidence to support the ALJ's conclusion that, while Plaintiff does suffer from a degree of pain and limitation, his condition is not totally disabling and is not as severe as testified to by the Plaintiff at the hearing. Guthrie v. Astrue, No. 10-858, 2011 WL 7583572, at * 8 (S.D.Ohio Nov. 15, 2011)["[I]t is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, or testimony, and other evidence"]; Parris v. Heckler, 733 F.2d 324, 327 (4th Cir. 1984) ["[S]ubjective evidence of pain cannot take precedence over objective medical evidence or the lack thereof." (citation omitted)]; Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) [ALJ may consider whether claimant's activities are consistent with allegations]; see also Cruse v. Bowen, 867 F.2d 1183, 1186 (8th Cir. 1989) ["The mere fact that working may cause pain or discomfort does not mandate a finding of disability]; Thomas v. Celebreeze, 331 F.2d 541, 543 [court scrutinizes the record as a whole to determine whether the conclusions reached are rational].

Plaintiff complains that, as part of his analysis, the ALJ noted that Plaintiff testified that he continued to look for jobs during the period of time he alleges he was disabled, and that he even received unemployment benefits for at least a year. (R.p. 18). Plaintiff criticizes this reference, correctly noting that even though the receipt of unemployment benefits generally entails holding oneself out as willing and able to do work, in the Fourth Circuit the "receipt of unemployment compensation does not in and of itself prove ability to work". Lackey v. Celebrezze, 349 F.2d 76, 79 (4th Cir. 1965); see also Cook v. Astrue, No. 11-1625, 2012 WL 1658923, at *4 (D.S.C. April 19, 2012)[Noting that "an application for disability may not be denied solely on the ground that the applicant received unemployment benefits"]. However, Lackey did not hold, nor does that case



19

mean (as Plaintiff apparently contends), that it was improper for the ALJ to note this fact in his decision. While not itself proving an ability to work, it is nonetheless proper for an ALJ to consider the inherent inconsistency between the receipt of unemployment benefits and an application for social security disability benefits *in conjunction with the totality of evidence* when assessing an individual's credibility. Cf. Richwalski v. Colvin, No. 13-132, 2014 WL 2614105, at * 11 (D.S.C. June 9, 2014) ["ALJ properly considered the plaintiff's receipt of unemployment benefits as just one of several factors that informed his ultimate assessment of the plaintiff's credibility"]. That is what the ALJ did here, and it was not reversible error for him to have done so. See, e.g., Schmidt v. Barnhart, 395 F.3d 737, 746 (7th Cir. 2005)[finding "claimant's decision to apply for unemployment benefits and represent to state authorities and prospective employers that he is able and willing to work" is a factor in assessing his subjective complaints of disability]; Brannon v. Astrue, No. 11-1568, 2012 WL 3842572, at *11 (D.S.C. Sept. 4, 2012) [ALJ decision to discount Plaintiff's credibility in part based on application for unemployment benefits complied with memoranda from ALJ Cristaudo where the ALJ considered the application for unemployment benefits in conjunction with all of the medical and other evidence of record]; Elder v. Astrue, No. 09-2365, 2010 WL 3980105, at *10 (D.S.C. Oct. 8, 2010)[ALJ's credibility finding supported in part by evidence that claimant applied for unemployment benefits].

In sum, the undersigned does not find that the ALJ conducted an improper credibility analysis, nor does his decision otherwise reflect a failure to properly consider the affect Plaintiff's impairments had on his ability to work. Rather, the record and evidence cited by the ALJ provides substantial evidence to support the ALJ's findings as to the extent of Plaintiff's limitations, and the undersigned can therefore find no reversible error in the ALJ's evaluation of Plaintiff's subjective testimony. Laws, 368 F.2d 640 [Substantial evidence is "evidence which a reasoning mind would



accept as sufficient to support a particular conclusion"]; Hays, 907 F.2d at 1456 [If there is evidence to justify refusal to direct a verdict where the case before a jury, then there is 'substantial evidence']; Lyall v. Chater, No. 94-2395, 1995 WL 417654 at * 1 (4th Cir. 1995)[Finding no error where the ALJ's analysis "was sufficiently comprehensive as to permit appellate review"]; Hunter, 993 F.2d at 35 [ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints]; Anderson, 344 F.3d at 815 [Evidence that a claimant is exaggerating symptoms can be considered as part of the evaluation of Plaintiff's subjective complaints]; Johnson, 434 F.3d at 658 [Accepting ALJ's finding that claimant's activities were inconsistent with complaints of incapacitating pain where she engaged in a variety of activities]; Cruse, 867 F.2d at 1186 ["The mere fact that working may cause pain or discomfort does not mandate a finding of disability]. While Plaintiff seeks to have this Court give precedence to his testimony as opposed to the other evidence of record and substitute its own judgment over that of the ALJ, that is not the proper standard for review in a Social Security case. This Court may not overturn a decision that is supported by substantial evidence just because the record may contain conflicting evidence. Smith, 99 F.3d at 638 ["The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court"]; see also Guthrie, No. 10-858, 2011 WL 7583572, at * 3, adopted by, 2012 WL 9991555 (S.D.Ohio Mar. 22, 2012)[Even where substantial evidence may exist to support a contrary conclusion, "[s]o long as substantial evidence exists to support the Commissioner's decision . . . this Court must affirm."]; Kellough, 785 F.2d at 1149 ["If the Secretary's dispositive factual findings are supported by substantial evidence, they must be affirmed, even in cases where contrary findings of an ALJ might also be so supported."] (citation omitted)].

        Therefore, this argument is without merit.



## IV.

### (Development of the Record)

Plaintiff's final claim of error is that the ALJ failed to properly develop the record for this (at the time) unrepresented Plaintiff (at the hearing). Plaintiff points to what, he argues, is a failure of the ALJ to allow Plaintiff to develop his testimony at the hearing by being disrespectful and cutting off Plaintiff's answers. Plaintiff further argues this contention is supported by the fact that the ALJ failed to obtain a "letter of disability" that had been written by Plaintiff's treating physician, Dr. Woody.[13] Craig, 76 F.3d at 589-590 [noting importance of treating physician opinions]. These arguments are without merit.

First, a review of the transcript does not show that the ALJ displayed a bias towards the Plaintiff. He was generally polite, although direct at times when seeking a specific response to a specific question. Even if the ALJ (in Plaintiff's view) was not as polite to him during the hearing as Plaintiff believes he should have been, that is not a basis for overturning the decision. Cf. Haack v. Colvin, No. 14-1296, 2015 WL 4478990 at * ____ (D.Minn. July 22, 2015) [Finding that the "ALJ's actions taken as a whole do not indicate an inability to render a fair judgment. Even if the ALJ was insensitive . . . , sarcastic comments 'are within the bounds of what imperfect men and women sometimes display' and do not indicate bias."] quoting Perkins v. Astrue, 648 F.3d 892, 903 (8th Cir. 2011). Rather, the issue before this Court is whether the record contains substantial evidence to support the ALJ's findings and decision, and there is no indication in the case file before this Court that the ALJ failed to fully develop the record or allow Plaintiff to testify as to what he

---

[13]This letter was subsequently submitted to the Appeal's Council as part of Plaintiff's appeal of the ALJ's decision. (R.p. 535). Plaintiff does not argue any error by the Appeals Council in its consideration of this evidence. Rather, as noted above, he asserts that the ALJ's failure to obtain this exhibit shows that the ALJ failed to properly develop the record of Plaintiff's claim.



believed his limitations to be. As such, no reversible error in the way the ALJ handled the hearing is demonstrated in this transcript.

As for the additional evidence from Dr. Woody, while the letter from Dr. Woody cited to by the Plaintiff did indeed exist at the time of the hearing, since it is dated September 15, 2010, there is no indication that the ALJ did not make every effort to obtain all of the medical evidence available. A review of the hearing transcript reflects that the ALJ not only had copies of relevant medical records before the hearing started, but that he also added additional medical records to the record in the case at the start of the hearing. (R.p. 29). It is unclear what else Plaintiff believes the ALJ should have done. See also, Bridwell v. Commissioner, No. 14-1181, 2015 WL 1534490, at * 3 (D.S.C. April 6, 2015 ["Whether he is represented or not, the Plaintiff bears the burden of proof, and he is responsible for providing evidence to support his application and demonstrate disability"]. Indeed, other than the one document from Dr. Woody provided by the Plaintiff to the Appeals Council, the ALJ had Dr. Woody's medical records before him for consideration, including Dr. Woody's medical records from that very day (September 15, 2010). See (R.p. 305).

Dr. Woody's treatment notes from September 15, 2010 (which were before the ALJ) reflect that Dr. Woody recorded that "[Plaintiff] would like [a] statement [from Dr. Woody] to apply for disability", under which Dr. Woody wrote "1 [month]". See (R.p. 305). This statement Plaintiff was seeking is the "to whom it may concern" letter (dated that same day) that Plaintiff supplied to the Appeals Council following the hearing. In this statement, Dr. Woody notes that Plaintiff had undergone surgery for cancer of the left tonsil with metastasis to the left neck on May 26, 2010, that he had experienced pain in the left neck radiating to the left side of the head since, and that he was at that time (September 15, 2010) undergoing radiation therapy with three treatments still remaining. (R.p. 535). This same information is, of course, contained in the medical record that was before the

23



ALJ at the time of the decision. Dr. Woody further states in this "to whom it may concern" letter that Plaintiff's radiation therapy (which he was still undergoing at that time) has "created pain sufficient to require constant medication and [that] he is unable to work", with this condition "likely to continue to increase over the next three to four weeks before he might show any improvement". (R.p. 535). Again, this statement is consistent with the medical record that was before the ALJ at the time and already discussed, wherein both Dr. Truesdale and Dr. Woody had advised Plaintiff that he would continue to experience pain and discomfort for several weeks after his radiation treatment had ceased. See (R.pp. 304, 335). This is not an opinion from Dr. Woody that Plaintiff was permanently disabled from all work activity. See 20 C.F.R. § § 404.1509, 416.909 ["Unless your impairment is expected to result in death, it must have lasted or must be expect to last for a continuous period of at least 12 months'].

         In conclusion, the hearing transcript reflects that the ALJ properly developed the record of Plaintiff's condition, including his testimony as to the restrictions Plaintiff contends his condition placed on his activities. The undersigned can discern no basis for a reversal of the decision in this transcript. The ALJ's failure to have Dr. Woody's "to whom it may concern" letter before him at the time of the hearing is also not a basis on which to reverse the decision. Dyer, 395 F.3d at 1211 [ALJ not required to specifically refer to every piece of evidence in the decision]; see also Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1999)["No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"]; Ngarurih v. Ashcroft, 371 F.3d 182, 190 n. 8 (4th Cir. 2004) ["reversal is not required when the alleged error clearly had no bearing on the . . . substance of the decision reached."]. Therefore, this claim is also without merit.



**Conclusion**

Substantial evidence is defined as " ... evidence which a reasoning mind would accept as sufficient to support a particular conclusion."  Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).  As previously noted, if the record contains substantial evidence to support the decision (i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision.  Blalock, 483 F.2d at 775.

Under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period.  Therefore, it is recommended that the decision of the Commissioner be **affirmed**.

The parties are referred to the notice page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

November 20, 2015
Charleston, South Carolina



### Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

